Irene BOOTH as Special Administratrix
of the Estate of Clarence Booth,
deceased, Appellant,

v.

BARBER TRANSPORTATION CO.,
a Corporation, Appellee.

No. 15911.

United States Court of Appeals
Eighth Circuit.

June 26, 1958.

Einar Viren, Omaha, Neb. (G. M. Gunderson, Omaha, Neb., and John R. Gallagher, O'Neill, Neb., on the brief), for appellant.

Lewis A. Dysart, Kansas City, Mo. (Lee Reeder, Wentworth E. Griffin, Reeder, Gisler, Griffin & Dysart, Kansas City, Mo., and Webb, Kelley, Green & Byam, Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The defendant, Booth,[1] has appealed from summary judgment ordering him to notify the Interstate Commerce Commission of the consummation of the sale of his motor carrier operating certificate of convenience and necessity, hereinafter referred to as operating rights, to plaintiff, Barber Transportation Co.[2] In substance, the defendant asserts that the court erred in granting summary judgment to the plaintiff for the following reasons:

1. There is a genuine dispute as to material facts; and

2. Summary judgment can not be entered for specific performance.

Summary judgments are authorized by Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. We have frequently had occasion to review the granting of summary judgments, and have repeatedly stated our view that summary judgments should be granted only in cases where it conclusively appears from the record that there is no genuine issue as to a material fact. All doubt should be resolved against the movant. A genuine issue of material fact can not be determined upon affidavit. Northwestern Auto Parts Co. v. Chicago, Burlington & Quincy R. Co., 8 Cir., 240 F.2d 743; Ford v. Luria Steel & Trading Corp., 8 Cir., 192 F.2d 880.

It is the defendant's contention that a fact issue exists in this case as to the amount of consideration plaintiff was to pay the defendant for his operating rights. We look to the record, which consists of pleadings, affidavits, and exhibits, to determine whether there is a genuine dispute as to material facts.

Both plaintiff and defendant were engaged in the over-the-road trucking business in interstate commerce. Plaintiff had been negotiating with the defendant for some time for the acquisition of defendant's operating rights. Plaintiff had obtained a number of written options for the purchase of such rights, none of which was exercised. Plaintiff and defendant had also engaged in oral preliminary negotiations. On June 28, 1955, a written contract for the sale of defendant's operating rights was entered into between the plaintiff and defendant. The contract provides that the defendant agrees to sell and the plaintiff agrees to buy the operating rights "for the total consideration of Five Thousand Dollars." The sale was contingent upon approval by the Interstate Commerce Commission, which approval was subsequently obtained. Plaintiff's affidavit shows the purchase price was paid by crediting the $5,000 purchase price upon a debt owed by de-

1. Defendant, Clarence Booth, died pending appeal. His executrix has been substituted as appellant. For convenience, we shall refer to Clarence Booth as defendant in this opinion.

2. The judgment appealed from also dismissed defendant's counterclaim upon the ground that it failed to state a claim upon which relief could be granted. No error is asserted as to the dismissal of the counterclaim either in defendant's statement of points relied upon for appeal or in his brief, and, hence, such issue requires no consideration.

fendant to plaintiff for interline obligations of the defendant, and by tendering defendant a credit memorandum for such indebtedness, in the amount of $5,086.40. The defendant does not dispute the validity of his indebtedness to the plaintiff, but contends that the true consideration for the sale was to be $5,000 in cash, plus the cancellation of the indebtedness. In support thereof, defendant offered a letter signed by plaintiff's president and executed and delivered contemporaneously with the sale contract. The letter, so far as material, provides that the plaintiff agrees "to cancel the $5,000.00 debt you owe Barber Transp. Co. even if these applications are not approved, provided you give full support." Defendant also contends that parol evidence of prior and contemporaneous negotiations is admissible to show the intention of the parties as to the consideration.

It would appear that no genuine fact dispute exists in this case unless evidence of the oral negotiations is admissible.

This court was presented with problems very similar to those now before us in Ford v. Luria Steel & Trading Corp., supra. There, as here, a Nebraska contract was involved, and summary judgment was entered. In the Ford case there were written contracts fixing the price of scrap sold. The seller claimed that, in addition to receiving the contract price, he was entitled to participate in the profits on resale of the scrap, by virtue of a contemporaneous oral agreement. We there held, in effect, that since the evidence of the oral agreement relied upon to create a fact dispute was barred by the parol evidence rule, no genuine fact dispute existed, and a summary judgment would be proper. See also 6 Moore's Federal Practice, ¶ 56.17 [43]. This court examined and discussed the pertinent Nebraska authorities, and concluded that under Nebraska law, in the absence of fraud, mistake, or ambiguity, a written contract can not be varied by parol evidence of prior or contemporaneous agreements. We

relied largely upon the case of Security Sav. Bank v. Rhodes, 107 Neb. 223, 185 N.W. 421, 20 A.L.R. 412, and subsequent cases citing the Rhodes case with approval. The Rhodes rule was again quoted with approval in Securities Acceptance Corp. v. Blake, 157 Neb. 848, 62 N.W.2d 132. In the last cited case, the court states (62 N.W.2d at page 134):

"* * * In the absence of fraud, mistake, or ambiguity a written agreement is not only the best evidence but the only competent evidence as to what was the actual contract of the parties. If it is claimed that the execution of a written contract has been induced by prior or contemporaneous oral conversation or agreement parol evidence is not admissible to add to or contradict the terms of the written contract. * * * *"

In Barkalow Bros. Company v. English, 159 Neb. 407, 67 N.W.2d 336, 340, the court observes:

"It has long been the law of this state that if persons to a transaction have put their engagement in writing in such terms as import a legal obligation without uncertainty of the object or extent of the engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and any parol agreement is merged in the written contract and testimony of prior or contemporaneous conversations is incompetent. * * * *"

We are satisfied that the written contract between the parties is a complete and unambiguous contract. The only ambiguity claimed is with reference to the consideration. The contract plainly states that the total consideration is $5,000. No oral evidence is admissible to vary the terms of the contract.

Defendant contends the contemporaneous letter, heretofore described, should be considered and interpreted as part of the contract. Stillinger and

Napier v. Central States Grain Co., Inc., 164 Neb. 458, 82 N.W.2d 637, supports this position.

The construction of the contract and the letter together offers no aid to the defendant. The letter can not reasonably be interpreted as making the cancellation of the indebtedness an additional consideration for the sale of the operating rights in the event the contract is carried out. By the letter plaintiff agreed to cancel defendant's debts to plaintiff if the application for the transfer of the operating rights was not approved, provided the defendant gave his full support to the application for approval. Since the application was approved, the contingency provided for by the letter did not arise.

Defendant has made no allegation that any fraud was perpetrated upon him, but, by way of conclusion, stated that the contracts were a fraud upon the Interstate Commerce Commission. Any claims of fraud are without merit. In the proceedings before the Interstate Commerce Commission, defendant placed the same interpretation upon the contract consideration as the trial court has placed upon it.[3]

We recognize that, if parol evidence of the prior negotiations is admissible, a fact dispute might exist, and hence we do not base our decision upon the inconsistency existing between defendant's position before the Commission and before the trial court, but mention the Commission proceedings only as additional support for our position that the contract is not ambiguous.

We are satisfied that under the circumstances of the present case parol evidence was inadmissible to vary the consideration specified in the sale contract, and that no genuine dispute exists as to any material fact.

We now proceed to consider the issue of whether a summary judgment awarding specific performance may be granted. We have held that specific performance lies for the enforcement of a contract of sale of motor carrier operating rights. Watson Bros. Transp. Co., Inc. v. Jaffa, 8 Cir., 143 F.2d 340.

Defendant's principal argument upon the issue we are now considering is that the summary judgment remedy is available only in an action at law, and that the remedy is not available in actions of an equitable nature, where the allowance or refusal of relief rests in the discretion of the court. The only authority cited by the defendant on this point is Seaboard Surety Co. v. Racine Screw Co., 7 Cir., 203 F.2d 532. This case supports defendant's view that equitable relief can not be granted by summary judgment. The court in the Seaboard case cites no authorities in support of its conclusion, and apparently rested its result upon determining that the words in Rule 56(c), "that the moving party is entitled to a judgment as a matter of law", limit the availability of summary judgments to law actions in which the movant is entitled to judgment as a legal right.

Summary judgments have been awarded in actions where the relief sought was equitable in nature. Dale v. Preg, 9 Cir., 204 F.2d 434; Huntington Palisades Property Owners Corp. v. Metropolitan Finance Corp., 9 Cir., 180 F.2d 132; Curtis v. O'Leary, 8 Cir., 131 F.2d 240.

3. Defendant in the joint application signed by him and filed with the Interstate Commerce Commission stated:
"The purchase price is $5,000.00. Transferor is indebted to Transferee in almost this amount. The indebtedness arises from delinquency in meeting interline obligations. When transferor's debt to transferee is set-off (per the plan of the parties) the balance of approximately $1,000.00 will be paid in cash at consummation. Transferee's cash position is such that this payment can be made with no loans involved. The exact amount of interline indebtedness cannot be determined at this time because the account is active and fluctuating."
In his testimony before the Commission, defendant testified:
"Q. And, as I understand it, the consideration is $5,000? A. Yes, sir.
"Q. And you are obligated to that company in that amount and your account will be credited with the purchase price. Is that the way you understand the transaction? A. Yes, sir."

In the Dale case, supra, specific performance of a contract to sell land was granted by summary judgment. The court states (204 F.2d at page 435):

"* * * The court correctly disposed of the question as one of law. * * *

* * * * * *

"* * * There being no genuine dispute of fact on any material issue, the court below did not err in entering summary judgment. * * *"

■ We find nothing in Rule 56 to support a conclusion that summary judgment is not available in actions which were formerly equitable actions. Rule 2 of the Federal Rules of Civil Procedure provides, "There shall be one form of action to be known as 'civil action'." Paragraph 56.02 [1] Moore's Federal Practice, states, "Rule 56 makes the procedure available in all actions that are subject to the Rules, and, in accordance with the mandate of Rule 2, whether formerly legal or equitable." We are satisfied that Rule 56 authorizes a summary judgment in a proper case in an action formerly cognizable solely in equity.

■■ In situations such as here presented, where the granting of relief is dependent upon the sound discretion of the court, we believe the trial court should proceed cautiously in granting summary judgment, and that summary judgment should be withheld and trial held on the merits whenever it appears likely that evidence could be produced which might affect the exercise of the judicial discretion.

In our present case, the only circumstance the defendant urges as a reason why the judicial discretion should be exercised in favor of denying relief is that the plaintiff perpetrated a fraud upon the Interstate Commerce Commission by not submitting to it the true agreement, and that the plaintiff therefore came into court with unclean hands. From what we have heretofore said, it is apparent that such a contention is without merit. We believe that the court

was justified in concluding that the plaintiff was entitled as a matter of law to a summary judgment, and that defendant has failed to demonstrate that the court abused its discretion in granting specific performance.

Affirmed.